345-07/MEU
FREEHILL HOGAN & MAHAR, LLP
Attorneys for Defendant
TOUTON FAR EAST PTE. LTD.
80 Pine Street
New York, NY 10005
Telephone: (212) 425-1900
Facsimile: (212) 425-1901
Michael E. Unger (MU 0045)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
SEAPLUS MARITIME CO., LTD.,

      Plaintiffs,

 -against-

TOUTON FAR EAST PTE. LTD.,

      Defendant.
-----------------------------------------------------------------x

07 CV 5903 (SAS)

**AFFIRMATION OF MICHAEL E. UNGER IN SUPPORT OF MOTION TO REQUIRE PLAINTIFF TO POST COUNTER-SECURITY**

MICHAEL E. UNGER, being duly sworn, deposes and says as follows:

1. I am a member of the law firm of Freehill Hogan & Mahar, LLP, attorneys for Defendant TOUTON FAR EAST PTE. LTD. ("TOUTON") in this matter.

2. I am duly admitted to practice law before this Court and am fully familiar with the facts and circumstances of this matter.

3. I submit this Affirmation in support of Defendant TOUTON's motion to reduce the attachment and to require Plaintiff SEAPLUS to post counter-security.

NYDOCS1/292387.1

## Background Facts

4. In November, 2006 TOUTON entered into a maritime contract of charter party with SEAPLUS, as owner, for the use and operation of a vessel to be nominated ("the charter party").

5. The charter party between TOUTON and SEAPLUS was for a voyage involving the carriage of bulk wheat from China to Sri Lanka.

6. Due to delays on the part of the shipper in supplying the cargo at the load port, SEAPLUS and TOUTON agreed to amend the charter to provide for a later loading date and with an increased freight rate.

7. SEAPLUS subsequently nominated and TOUTON accepted the M/V JIN CANG as the vessel to perform the voyage.

8. Based upon the nomination and acceptance of the M/V JIN CANG, TOUTON arranged for the cargo of wheat to be ready for loading at the port in China.

9. SEAPLUS, however, in breach if the charter party, subsequently advised TOUTON that it would not be able to tender the M/V JIN CANG on the agreed upon day in China and asked that another vessel, the M/V OPAL NAREE be substituted for the M/V JIN CANG.

10. SEAPLUS, in further breach of the charter party, demanded that TOUTON pay an additional $4.50 per metric ton in freight above the sum which had been agreed under the amended charter party.

11. Given that the cargo of wheat was ready for loading and the market rate for freight was even higher than the $37.25 per metric ton demanded by SEAPLUS, and in

order to mitigate its damages, TOUTON agreed, under protest and duress, to the tender of the M/V OPAL NAREE and to the higher freight rate being demanded.

12. A copy of Defendant TOUTON's Amended Answer with Counterclaim is annexed hereto as **Ex. 1**.

13. TOUTON's Counterclaim includes the following components: (a) $116,424.00 in overpaid freight; (b) interest at the rate of 8.5% per annum compounded quarterly over three years of $33,415.86; and (c) estimated London arbitration and attorneys' fees and disbursements of $35,000 for a total of $184,839.86.

14. TOUTON has requested that SEAPLUS voluntarily post counter-security for TOUTON's counterclaim, but SEAPLUS has rejected TOUTON's requests.

15. In late June, 2007, SEAPLUS filed a Rule B action against TOUTON, and succeeded in restraining $178,450.45 in the form of a wire transfer being sent from TOUTON to pay a third party invoice for grain purchased by TOUTON.

16. The $178,450.45 in security originally obtained by SEAPLUS included $75,000 in security for costs and attorneys' fees in connection with three London arbitrations which SEAPLUS claimed it intended to pursue against TOUTON.

17. In fact, none of the arbitrations was ever pursued.

18. In any event, the three charters incorporated the LMAA FALCA Rules which place a cap on recoverable costs, including arbitrators' fees, for all three claims.

19. Despite numerous requests since mid-August, only on October 18, 2007 did SEAPLUS agree to execute a stipulation providing for the release of $43,000 in excess security for costs. That stipulation was submitted to the Court on October 23, 2007 and it is anticipated the funds will be released shortly.

20.    Nonetheless, SEAPLUS will retain $135,450.45 in security in respect of its claims.

21.    TOUTON's funds, which are currently being held by JPMorgan Chase Bank are not being held in interest-bearing accounts.

22.    It is anticipated that interest lost on the amount to remain secured by SEAPLUS at the rate of 8.5% per annum compounded quarterly over a period of three years is $38,876.


Dated: New York, New York
       October 24, 2007

_____
Michael E. Unger (MU 0045)
FREEHILL HOGAN & MAHAR, LLP
Attorneys for Defendant
TOUTON FAR EAST PTE. LTD.
80 Pine Street
New York, NY  10005
(212) 425-1900
(212) 425-1901 fax

Exhibit 1

345-07/MEU
FREEHILL HOGAN & MAHAR, LLP
Attorneys for Defendant
TOUTON FAR EAST PTE. LTD.
80 Pine Street
New York, NY 10005
Telephone: (212) 425-1900
Facsimile: (212) 425-1901
Michael E. Unger (MU 0045)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
SEAPLUS MARITIME CO., LTD.,

                    Plaintiffs,

- against -

TOUTON FAR EAST PTE. LTD.,
                    Defendants.
----------------------------------------------------------------X

07 CV 5903 (SAS)

**VERIFIED ANSWER
WITH COUNTERCLAIMS**

Defendant TOUTON FAR EAST PTE. LTD. (hereinafter "TOUTON") through its attorneys Freehill, Hogan & Mahar, LLP, responds, upon information and belief, to the Verified Complaint of Plaintiff SEAPLUS MARITIME CO., LTD. (hereinafter "SEAPLUS") as follows:

1. DENIES knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 1 of the Verified Complaint.

2. DENIES knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 2 of the Verified Complaint.

3. ADMITS the allegations contained in Paragraph 3 of the Verified Complaint.

4. ADMITS the allegations contained in Paragraph 4 of the Verified Complaint.

5. ADMITS the allegations contained in Paragraph 5 of the Verified Complaint.

6. ADMITS the allegations contained in Paragraph 6 of the Verified Complaint.

7. ADMITS that during the course of each of the aforesaid charters, disputes have arisen between the parites, but except as so specifically ADMITTED, DENIES the remaining allegations contained in Paragraph 7 of the Verified Complaint,.

8. DENIES each and every allegation contained in Paragraph 8 of the Verified Complaint.

9. ADMITS the allegations contained in Paragraph 9 of the Verified Complaint.

ADMITS that interest, costs and attorneys' fees are routinely awarded to the prevailing party in London arbitration proceedings, but except as so specifically ADMITTED, DENIES the remaining allegations contained in Paragraph 10 of the Verified Complaint,

10. ADMITS that Plaintiff has restrained $178,450.45 of Defendant's funds pursuant to this action, but except as so specifically ADMITTED, DENIES the remaining allegations contained in Paragraph 11 of the Verified Complaint.

11. No response is required as to Paragraph 12 of the Verified Complaint.

12. No response is required as to Paragraph 13 of the Verified Complaint..

**FURTHER ANSWERING THE COMPLAINT AND AS AND FOR SEPARATE PARTIAL AND OR COMPLETE DEFENSES THERETO, DEFENDANT TOUTON ALLEGES UPON INFORMATION AND BELIEF AS FOLLOWS:**

13. The Complaint fails to state a cause of action upon which relief may be granted.

14. Plaintiff has improperly and /or insufficiently served process upon Defendant.

Plaintiff failed to state a cause of action upon which relief may be granted.

15. Plaintiff has failed to mitigate its damages.

16. Venue is improper before this Court.

17. This matter should be dismissed under the doctrine of *forum non conveniens*.

18. Any damages, if any, suffered by Plaintiff, which are denied, were caused by the contributory negligence of the Plaintiff or others.

19. Plaintiff is not the real party in interest.

20. This matter is subject to arbitration and the matter should be dismissed or stayed in favor of arbitration at London pursuant to the agreement of the parties.

### AS A FOR ITS COUNTERCLAIM AGAINST PLAINTIFF SEAPLUS, DEFENDANT TOUTON ALLEGES UPON INFORMATION AND BELIEF :

21. This counterclaim arises out of the same transaction or occurrence with respect to which the action was originally filed. Plaintiff SEAPLUS has attached funds belonging to Defendant TOUTON to serve as security to respond to Plaintiff's alleged damages.

22. On or about November 24, 2006, SEAPLUS, as disponent owner, entered into a maritime contract on an amended SYNACOMEX 90 voyage charter party form with TOUTON, as charterer, for the use and operation of a vessel to be nominated ("the charter party").

23. The charter party between TOUTON and SEAPLUS was for a voyage involving the carriage of 25,872 MT of wheat in bulk from Dalian, China to Colombo, Sri Lanka at a freight rate of $31.75/MT with a laycan of February 1 to 15, 2007. The shipper required more time to get the cargo delivered to the loadport and SEAPLUS and TOUTON amended the charter party to provide for a new laycan of March 15 to 30, 2007 with an increased freight rate of $32.75/MT.

24. SEAPLUS subsequently nominated, and TOUTON accepted, the M/V JIN CANG as the vessel that would perform the voyage contemplated in the charter party. The agreed freight rate, as per the terms of the amended charter party, was $32.75/MT.

25. Based on the nomination and acceptance of the M/V JIN CANG, TOUTON arranged for the cargo of wheat to be ready for loading at the port of Dalian.

26. SEAPLUS, however, in breach of the charter party, subsequently advised TOUTON that it would not be able to tender the M/V JIN CANG to TOUTON on the agreed upon day at the port of Dalian and asked that another vessel, the M/V OPAL NAREE, be substituted for the M/V JIN CANG.

27. SEAPLUS, in further breach of the charter party, demanded that TOUTON pay a higher freight rate than the one contractually agreed upon by the parties, or $37.25/MT instead of $32.75/MT.

28. TOUTON, given that the cargo of wheat was ready for loading and that the market rate for freight was even higher than the one demanded by SEAPLUS, and in order to mitigate its damages, agreed, under protest and duress, to the tender of the M/V OPAL NAREE and to the higher freight rate being demanded.

29. TOUTON has performed all its obligations under the charter party.

30.     As a result of SEAPLUS' breach of the charter party, TOUTON has sustained damages in the sum of $116,424.00, reflecting the overpayment of freight it made to SEAPLUS.

31.     Despite due demand for payment of the sum of $116,424.00 by TOUTON, SEAPLUS, however, in breach of the charter party with TOUTON, has refused or has otherwise failed to pay.

32.     Pursuant to the terms of the charter party, all disputes arising thereunder are subject to London arbitration with English law to apply. TOUTON has demanded arbitration against SEAPLUS in London. TOUTON specifically reserves its right to arbitrate the merits of its dispute with SEAPLUS pursuant to the terms of the charter party.

33.     In addition to damages for its overpayment of freight claim against SEAPLUS, TOUTON also seeks recovery of interest, and anticipated attorneys' fees and costs in the arbitration, all of which are recoverable as part of TOUTON's main claim under English law.

34.     As nearly as presently can be computed, TOUTON is entitle to counter-security from SEAPLUS in respect of the following:

(a) Overpayment of freight in the sum of $116,424.00;

(b) Interest on the above sum in the amount of $33,415.86, calculated on the above sums at the rate of 8.5% per annum, compounded quarterly, for 3 years, the estimated time it will take to obtain a final arbitration award, which interest is recoverable under English law;

(c) Legal fees, arbitrators' fees and costs that will be incurred by TOUTON in respect to the London arbitration which are recoverable pursuant to English law and are estimated to be in the sum of $35,000 by English solicitors;

For a total of **$184,839.86.**

35. On June 21, 2007, this Court issued an Order Directing Clerk to Issue Process of Maritime Attachment and Garnishment as to TOUTON's funds up to the sum of $178,450.45.

36. Subsequently the Clerk issued Process of Maritime Attachment and Garnishment of any assets of TOUTON and funds in the sum of $178,450.45 were restrained at one or more garnishee banks.

37. Defendant TOUTON lacks counter-security for its counterclaim.

38. Defendant TOUTON brings this counterclaim solely to obtain counter-security for its counterclaim.

WHEREFORE, Defendant TOUTON prays as follows:

1. That the Court, in accordance with the provisions of Rule E(7) of the Supplemental Rules for Certain Admiralty and Maritime Claims, direct Plaintiff SEAPLUS to post a bond in the usual form in the amount of $184,839.86 as security to respond in damages to the claim set forth in the Counterclaim;

2. That the Court enter judgment against Plaintiff SEAPLUS in the amount of any arbitration award obtained by Defendant TOUTON against Plaintiff, plus interest, costs and attorneys' fees;

3. That such judgment, to the extent possible, be satisfied by the security posted by Plaintiff; and

4.  That the Court grant Defendant such other, further and different relief as may be just, proper and equitable in the premises.

Dated: New York, New York
       October 23, 2007

                                    FREEHILL, HOGAN & MAHAR, LLP
                                    Attorneys for Defendant
                                    TOUTON FAR EAST PTE LTD.

                                    By: _____
                                        Michael E. Unger (MU0045)

                                    80 Pine Street
                                    New York, NY 10005-1759
                                    Telephone: 212 425-1900
                                    Facsimile: 212 425-1901

TO:

LENNON, MURPHY & LENNON LLC
Attorneys for Plaintiff
SEAPLUS MARITIME CO. LTD.
The Graybar Building
420 Lexington Avenue, Suite 300
New York, New York 10170
Attn:  Kevin J. Lennon, Esq.
       Charles E. Murphy, Esq.
(212) 490-6050 – phone
(212) 490-6070 - facsimile